United States District Court
Southern District of Texas
**ENTERED**
October 14, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| NEXPERA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:25-CV-00047 |
| | § | |
| SAGE ENVIRO TECH LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER ADOPTING MEMORANDUM AND RECOMMENDATION**

Pending before the Court is "Nexpera LLC's Corrected Motion to Dismiss Daniel J. Prokop, Sage Enviro Tech, LTD, and Sage Water LTD's Counterclaims" (D.E. 130). On August 17, 2026, United States Magistrate Judge Jason B. Libby issued a Memorandum and Recommendation (M&R, D.E. 174), recommending that Nexpera LLC's (Nexpera's) motion be granted in part and denied in part and that Respondents' requests for leave to amend be denied. Daniel J. Prokop (Prokop) timely filed objections (D.E. 182) to which Nexpera responded (D.E. 190). Nexpera timely filed objections (D.E. 183) to which Prokop responded (D.E. 184). The Court considers the objections in turn.

**A. Prokop's Objections**

**1. Antitrust Conspiracy**

The M&R concluded that Prokop's complaint of a conspiracy in violation of § 1 of the Sherman Antitrust Act failed for lack of sufficient factual allegations of a conspiracy: concerted conduct among separate economic actors. D.E. 174, pp. 7, 10. Prokop objects

because he named Veolia Water North America Operating Services, LLC (Veolia Water) as a co-conspirator. D.E. 182, p. 7. And the conspiracy was Nexpera and its agents and affiliates acting in concert to pursue this litigation—not to vindicate legal rights, but to exclude others from the KOH regeneration services market and intimidate customers from pursuing business with Defendants. *Id*.

The M&R's analysis specifically references these pleadings, on which Prokop's objection rests. And it finds the pleadings conclusory. The Court agrees. There are no factual allegations to address what conduct Veolia Water engaged in—whether it agreed to support Nexpera's lawsuit, whether it provided any labor, funding, or informational support, and whether its intent was the type of conduct that the antitrust statute was designed to regulate against. Simply naming Veolia Water as an affiliate of Nexpera in relation to the use of the KOH regeneration technology is insufficient to make anticompetitive conduct plausible.

Prokop also objects that the M&R's concern about the ability of affiliates, as separate economic actors, to conspire is a matter of fact that cannot be resolved at the Rule 12 stage. D.E. 182, pp. 8-9. While the truth of economic status is a fact question, the basis for the M&R's recommendation is the paucity of factual allegations to support an inquiry into any alleged conspiracy. Without allegations of specific conspiratorial conduct, it does not matter whether the affiliates are separate economic actors. And without allegations of each party to the conspiracy's separate economic interests, that fact question is not sufficiently raised in the pleadings to make the claim plausible.

The Court **OVERRULES** Prokop's objections to the recommended dismissal of the Sherman Act § 1 claim for conspiracy to engage in anticompetitive conduct. Because Prokop's objections regarding his failure to plead the conspiracy element are overruled, the Court need not and does not address Prokop's argument that the other elements of his claim are satisfied or Nexpera's argument that unilateral conduct is not actionable. D.E. 190, p. 3.

**2. Intentional Interference with Prospective Business Relationships**

The M&R concluded that Prokop did not plead sufficient facts to make plausible his contention that he had prospective business relationships with which Nexpera interfered. D.E. 174, p. 19. This is in application of the element that "there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party." *Id*. p. 17.

Prokop objects, claiming that the M&R held his pleadings to the standard for interference with existing contracts rather than prospective business relationships. D.E. 182, pp. 10-11. While the M&R's conclusion may be read to address non-existent contracts, the analysis leading to the conclusion amply included the absence of any particular prospective business relationships with which Nexpera is alleged to have interfered. Prokop's blanket reference to "customers" and identification of the general parameters of the types of industrial entities that use KOH regeneration services is insufficient to support a claim that Nexpera's wrongful conduct affected any particular prospective business relationships—business deals that Prokop reasonably expected to have formalized absent Nexpera's conduct.

Prokop treats allegations that define a market for anticompetitive purposes as the equivalent of the identification of prospective business relationships for intentional interference purposes. D.E. 182, p. 12. But these are two separate elements for two separate causes of action. Prokop offers no authority for conflating the two. The elements of an intentional interference claim are geared toward specific customer relationships, whereas the elements for an antitrust claim are focused on a more general market manipulation. Pleading one does not equate to pleading the other.

As Nexpera points out in its response, Prokop's attempt to address a particular business relationship involves Nexpera's complaint that Sage took one of Nexpera's accounts. That factual allegation is irrelevant. D.E. 190, p. 5 n.3. Prokop's claim depends on Nexpera (not Sage), interfering with Prokop's (not Nexpera's) customer account(s). Prokop's objections to the recommended dismissal of his intentional interference with prospective business relationships are **OVERRULED**.

### 3. Breach of Contract: Third-Party Beneficiary

Prokop claims that he is a third-party beneficiary of a Settlement Agreement and Release executed by Veolia Water in connection with a trade secrets case filed in Florida and resolved in December of 2008. *See* D.E. 174, p. 22 (referring to D.E 129-2). He claims that Nexpera is bound by the agreement as a successor or assignee of Veolia Water. And he states four objections to the M&R's analysis in recommending dismissal of the breach of contract claims. The Court takes them in logical order.

**First Objection: Nexpera Is a Corporate Successor to Veolia Water**. Prokop objects to the M&R's failure to determine that—based on judicial admissions—Nexpera is bound by the 2008 Settlement Agreement as a successor or assign. D.E. 182, p. 17. Instead, the M&R based its recommendation to dismiss the breach of contract claim on (a) the inapplicability of the non-disparagement clause to Prokop and (b) Prokop's failure to allege facts that implicate the neutral-reference clause. D.E. 174, p. 24. Both arguments assume—without deciding—that Nexpera is bound as a successor to the terms of the Settlement Agreement.

The Court finds no error in this approach. The M&R states the limitations of the factual allegations regarding Nexpera's prior corporate structure. *See* D.E. 174, p. 22 n.5. Because they are not determinative in this context, the Court need not treat Nexpera's general assertions—formulated to address Prokop's allegations—as binding specific admissions at this time. Prokop's objection is **OVERRULED**.

**The Two Clauses**. The Settlement Agreement contains two provisions that Prokop has placed at issue here:

1. A neutral-reference clause specifically identifying Prokop and two other individuals as employees who separated from Veolia Water. D.E. 129-2, ⁋ 4. It requires that references be limited to dates of employment and last position held.

2. A non-disparagement clause prohibiting "negative reference to the character or the business reputation of the non-corporate parties to this Settlement Agreement." D.E. 129-2, ⁋ 7.

Prokop's second and third objections require that we construe the meaning and intent of these two provisions.

The Settlement Agreement, by its terms, "shall be interpreted and controlled by the substantive law of the state of Florida without reference to the principles of conflicts of law." D.E. 129-2, ⁋ 8(C). Florida law includes standard contract construction rules by which the court is to read terms according to their ordinary meaning, construe the contract as a whole, give each word and provision effect, and avoid an interpretation that renders any term superfluous. *Paraiso CU-1, LLC v. PRH Paraiso Four, LLC*, 414 So. 3d 271, 274–75 (Fla. Dist. Ct. App. 2025) (citing cases), *reh'g denied* (July 8, 2025). Here, there are two different clauses addressing two different types of conduct relating to two different classes of individuals. As set out more fully below, the Court gives effect to each of those provisions by refusing to conflate them.

**Second Objection: the Non-Disparagement Clause**. The M&R recommends dismissal of any breach of contract claim related to the non-disparagement clause because it is undisputed that Prokop is not a signatory to the Settlement Agreement. Prokop objects because it is axiomatic that he does not have to be a party in order to assert a third-party beneficiary claim. This, he argues, is the precise context in which third-party beneficiary claims are made. D.E. 182, pp. 13-14, 16.

But Prokop misunderstands the application of the nonparty issue to his breach of contract complaint. As Nexpera points out, the non-disparagement clause unambiguously applies to a specific class of persons: "non-corporate ***parties to this Settlement Agreement***." D.E. 190, pp. 6-7 (emphasis added). Because this clause is so limited, it cannot reasonably be construed as intending to apply to a class that also includes (a) other nonspecified nonparties or (b) former employees named in a different clause, but who are not signatories to the agreement.[1] Such an application is contrary to the plain language the parties chose and other contract construction rules, set out above.

Prokop's discussion of this clause is misdirected. He addresses "non-corporate parties," leaving out the remainder of the sentence that states the qualifier: "to this Settlement Agreement." He thus seeks to treat "non-corporate parties" as equivalent to "individuals." He then seeks to apply the benefit offered to any individual involved in the case, including himself as a former Veolia Water employee, enforceable through a third-party beneficiary theory.

Prokop's application of the terms is inappropriate and an unreasonable construction. The non-disparagement provision clearly states that it applies to parties. Yet, he seeks to apply it to nonparties by way of a third-party beneficiary theory, which requires that the

---

[1] Prokop objects that the Magistrate Judge applied the wrong standard of review in describing his argument as a "stretch." He claims this expressed the conclusion that his pleading was not convincing rather than not plausible. The Court reads this statement as an expression that Prokop's pleading of a breach of this clause exceeds the bounds of contract construction—a proposition the Court agrees with. A pleading of breach of contract is not plausible when it is based on a clear misconstruction of an unambiguous contract term. To the extent that Prokop objects to the Magistrate Judge's use of an incorrect standard of review, the objection is **OVERRULED**.

intent to benefit the third party be apparent on the face of the contract.[2] And the language of the contract refers only to parties. The language of the entire clause leaves no room to infer that it was intended to apply more broadly than stated. This is not a matter of an ambiguity of intent to be deferred to trial.

The M&R's concern about Prokop's signatory status was addressed to the stated scope of beneficiaries of the clause at issue: "parties to this Settlement Agreement." The M&R did not recommend denying third-party status simply because Prokop was not a signatory to the agreement. It is because he was not a party to the Settlement Agreement and thus not a member of the class of persons that the non-disparagement clause was meant to benefit. Without such an intended benefit, the third-party beneficiary theory does not apply. The Court **OVERRULES** Prokop's objection to the M&R's limitation of the non-disparagement clause to those who were parties to the Settlement Agreement.

**Third and Fourth Objections: the Neutral-Reference Clause**. The M&R analyzes both contractual clauses in the same section, alternating between them throughout. But the analysis does not apply equally to both. Separating the recommended holdings by clause, it appears that the M&R recommends dismissal of Prokop's breach of contract theory as addressed to the neutral-reference clause because "Prokop has failed to allege Nexpera gave Prokop a reference that was not neutral or consisted of anything more than his dates of employment or last position held." D.E. 174, p. 24.

[2] One element of Florida's adoption of the third-party beneficiary doctrine is "the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party." D.E. 174, p. 23. Prokop did not object to this statement of governing law.

Prokop objects to this holding in part because it rests on a ground not raised in Nexpera's motion. D.E. 182, pp. 18-19 (referencing D.E. 130, pp. 30-33). He contends that the only issues Nexpera raised were his status as a third-party beneficiary and the litigation privilege. *Id*. While the motion emphasizes that the conduct of which Prokop has complained is in a "public pleading," that observation was not made to challenge whether the conduct was proscribed by the neutral-reference clause. Instead, it was made to justify the application of the litigation privilege. This distinction matters. The objection to resting dismissal on an argument not raised in the motion is **SUSTAINED**.

The Court must therefore consider whether the briefing of the objection and response render the claim for breach of the neutral-reference clause pretermitted. Prokop objects to dismissal, claiming that Nexpera's allegations in this public lawsuit regarding his past employment, termination, and character do, in fact, violate the neutral-reference provision. D.E. 182, pp. 17-19. Nexpera responds that the M&R was correct because the neutral-reference clause must be interpreted to govern responses to private requests for employment references in order to give it effect alongside the separate non-disparagement clause. D.E. 190, p. 7.

These arguments do not present the same clarity that the non-disparagement clause presented with its provisions benefiting only parties to the Settlement Agreement. The neutral-reference clause benefits Prokop, but may not do so to the extent required for third-party beneficiary status under Florida law. And the public/private communication distinction may or may not hold up in relation to the separate non-disparagement clause

after full briefing of contract construction principles. The objection to the characterization of the conduct precluded by the neutral reference clause is **SUSTAINED**.

**Alternative Grounds/Litigation Privilege**. By sustaining Prokop's objection to the dismissal of his breach of contract claim regarding the neutral-reference provision of the Settlement Agreement on the merits, the Court has triggered Nexpera's conditional objection that the M&R erred in refusing to apply the litigation privilege to the disparagement allegations in Nexpera's pleading—the act constituting the alleged breach. D.E. 190, pp. 7-8. Anticipating this, Prokop objected in advance to any ruling that uses the alternative ground of immunity based on the litigation privilege for the reasons stated in the M&R. D.E. 182, p. 19.

This issue turns on an understanding of *Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197, 1219 (11th Cir. 2018). *Sun Life* is the only authority cited by the M&R and discussed in both parties' briefing regarding the scope of the litigation privilege. At issue is whether the privilege immunizes pleading allegations that serve as the substantive basis for the breach of contract claim. Nexpera argues that it does. It contends that the *Sun Life* exception to the privilege applies only to a claim that the act of filing the pleading (as opposed to its contents) constitutes a breach of contract.

At the center of the *Sun Life* claim was an insurance policy's incontestability clause: "After this Policy has been in force during the lifetime of the [i]nsured for a period of two years from its Issue date, we [Sun Life] cannot contest it except for non-payment of [p]remiums." 904 F.3d at 1206. Sun Life filed a lawsuit more than two years after the issue

date, contesting the policy on the basis that it was procured "through a fraudulent and conspiratorial scheme." *Id*. at 1204.

The Eleventh Circuit started from the position that all litigation was privileged. But it noted an exception where the act of filing litigation (as opposed to the statements made in that litigation) was the subject of the complaint. It cited a malicious prosecution scenario as an exception to the general privilege rule. *Id*. at 1219 (discussing *Debrincat v. Fischer*, 217 So. 3d 68 (Fla. 2017) ("Applying the litigation privilege here would eviscerate this long-established cause of action for malicious prosecution." That is because the elements of the malicious prosecution claim include the filing of the prosecution.)).

Where it was the content of the pleading rather than its filing that was at issue, the Eleventh Circuit then explained:

> We do not think that *James*, or any other Florida authority, requires us to extend absolute immunity to the filing of a lawsuit ***where that specific act breaches a contract***. Although *James* allowed an immunity defense to defeat a breach of contract claim, ***the underlying conduct for which immunity was sought—in-court defamatory statements—went directly to the original purpose of the litigation privilege***. Specifically, James' statements were made as part of a vigorous defense in his divorce proceeding and ***allowing such statements to be the object of a subsequent lawsuit (either for defamation or breach of contract) could have a serious "chilling effect."***

*Sun Life*, 904 F.3d at 1219 (emphasis added; discussing *James v. Leigh*, 145 So. 3d 1006 (Fla. 1st DCA 2014)). Thus, Sun Life was subject to the breach of contract claim and had no litigation privilege because it filed an action that contested the policy, not because it made defamatory allegations of fraud and conspiracy.

The *Sun Life* opinion closes its litigation privilege analysis with dicta that the privilege would not protect a party who solemnly agrees on one day to maintain trade secrets and then files a lawsuit the next day disclosing those same secrets. This would appear to conflict with the *James* opinion, previously discussed, that extended the privilege to immunize defamatory statements made in litigation when the party had previously entered into a non-disparagement agreement. But different public policy interests are at work in protecting trade secrets.

For instance, trade secrets are protected by statute in the public interest because of the trade investment they represent and their commercial value. This includes protection from disclosure in litigation. *See* Fla. Stat. § 688.006 (Uniform Trade Secrets Act) (authorizing protective orders, in camera hearings, and sealing of court records to protect trade secrets). In contrast, public policy favors open proceedings regarding potential disparagement pertinent to litigation over the parties' private right to contract for secrecy. *See James, supra*. Freedom from disparagement has no similar intrinsic value when contrasted with the interests of open judicial proceedings.

For these reasons, the Court **SUSTAINS** Nexpera's objection and **OVERRULES** Prokop's objection, finding that the litigation privilege applies to protect Nexpera's pleading as against Prokop's claim that it violates the neutral-reference clause of the Settlement Agreement. Consequently, the Court **GRANTS** Nexpera's motion and **DISMISSES** Prokop's claim for breach of contract based on the neutral-reference clause.

**4. Leave to Amend**

Prokop objects to the dismissal of any claim without first giving him an opportunity to amend his allegations. D.E. 182, pp. 2, 4, 5, 20-22. A court need not grant a motion for leave to amend where the movant fails to specify what amendment is desired and how it would cure its pleading defects. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). When seeking to amend, the movant must set forth "with particularity the grounds for the amendment and the relief sought." *Id*. A "bare request in an opposition in a motion to dismiss" absent any particular grounds is inadequate. *Id*.

Prokop claims that he has adequately pled the claims subject to dismissal or has indicated the subjects that he would address in his effort to cure his deficiencies. *See* D.E. 182, pp. 19-20. The Court disagrees. Prokop has not disclosed "facts" that he would add. Instead, he lists the general subject matter to which any alleged facts would be directed. He has not set out "facts" when he says he will address corporate structures, the economic interests of the parties, the subject matter of their agreements, their conduct with respect to other parties, or the identity of other parties involved in anticompetitive or other wrongful conduct. These are categories of issues, not facts. To the extent that they are addressed at all in his objections, they are conclusory, speculative, or fail to address the specific deficiency identified.

Moreover, the proposed allegations—if they could now be set out with factual sufficiency—were not first presented to the Magistrate Judge for consideration as required.

Generally, a claim raised for the first time in objections to an M&R is not properly before the district court and therefore is waived. *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also, e.g., Place v. Thomas*, No. 2-40923, 2003 WL 342287, at *1 (5th Cir. Jan. 29, 2003) (per curiam).

Prokop has not demonstrated that he can supply the necessary factual allegations and he has not explained his failure to do so during the proceedings before the Magistrate Judge. The objections to the M&R's recommendation to deny leave to amend are **OVERRULED**.

**5. Prejudicial Dispositions**

Last, Prokop objects to the dismissal of his claims being "with prejudice." D.E. 182, pp. 22-23. In support of this objection, he claims that any defect in his pleading is curable. However, as noted above, he has not demonstrated that he can cure the defects. And he has had adequate time to show how he could do so. Under these circumstances, dismissal with prejudice is appropriate.

**B. Nexpera's Objections**

**1. Inconsistent Application of Standard of Review**

Nexpera objects to the denial of its motion to dismiss with respect to the Sherman Act § 2 counterclaims. First, it argues that the Magistrate Judge failed to apply a consistent standard of review to the factual sufficiency of the § 1 counterclaims (found insufficient) and § 2 counterclaims (found sufficient). This is not a viable objection because the two sets of counterclaims involve different fact issues. A consistent pleading standard can generate

different results when applied to different factual claims. The first objection is **OVERRULED**.

#### 2. Pleading of Relevant Market and Market Power

Second, Nexpera argues that Defendants' allegations of the relevant market and market power to support the § 2 counterclaims are factually insufficient because they do not specifically address interchangeability and elasticity of demand. D.E. 183, pp. 2-3. The cases on which Nexpera relies for this objection involve relatively unskilled labor, such as tourist services, and retail markets generally known to involve multiple players. Those are not similar cases.

This is not just an antitrust case. It is a trade secrets case. It involves allegations by and between all of the parties regarding proprietary information allegedly entitled to protection because of the competitive advantage it provides in a limited industrial field that requires large-scale operations. As the Magistrate Judge concluded, this is a matter best deferred to the evidentiary stage of the case. The pleadings demonstrate that there is a plausible market subject to injury or abuse with respect to Nexpera's market power. The second objection is **OVERRULED**. Because the Court retains the Sherman Act § 2 counterclaims, it need not and does not address Prokop's alternative argument regarding pleading of an attempted monopolization. *See* D.E. 184, p. 12.

#### 3. Prokop's Standing

The Magistrate Judge found that Prokop had adequately alleged his standing to bring his antitrust counterclaims because he asserts that this lawsuit is an effort to restrain

trade, which is designed to restrict his employment as a technical expert in the field. More directly, he alleges that Nexpera's allegations have caused him legal expenses, reputational harm, and loss of professional opportunities. D.E. 174, pp. 12-13. Nexpera objects, arguing that Defendant Prokop, as an individual employee, is not a "consumer" or "competitor" and does not have standing to pursue a Sherman Act antitrust complaint. D.E. 183, pp. 2, 7.

Nexpera's argument is that Prokop is an employee, whose injuries, if any, are derivative of those of his employer. It argues that the Magistrate Judge's contrary holding is "untethered to any authority." D.E. 183, p. 8. Yet Nexpera's authorities do not support its challenge to an employee's status as a competitor where his employment is inextricably intertwined with an employing competitor's ability to compete in the market. Neither do the authorities eliminate a finding of a direct antitrust injury where a lawsuit brought by the employer's competitor states allegations and makes claims against the employee, individually.

Standing in the antitrust setting calls for assessment of "several factors: 1) the nature of plaintiff's alleged injury; 2) the directness of the injury; 3) the speculative measure of the harm; 4) the risk of duplicative recovery; and 5) the complexity in apportioning damages." *Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1183 (5th Cir. 1988). In *Bell*, the claimant's business related to an herbicide applicator and he sought lost profits from a reduction in sales. The court rejected the claimant's standing because the market restraint at issue affected the price and availability of the herbicide—not the applicator. The

products were in two separate markets, the injury was indirect, and the measure of harm was speculative. Here, Nexpera seeks to prevent Prokop from pursuing his work in a specialized industrial market that is the market in which the restraint is alleged. Nexpera's claims treat Prokop as a competitor using its trade secrets in Nexpera's market. *See* D.E. 184, pp. 13-14 (citing Nexpera's allegations treating Sage and Prokop alike as competitors).

In *Norris v. Hearst Trust*, 500 F.3d 454, 463-65 (5th Cir. 2007), the claimants were newspaper distributors who were terminated after protesting the newspaper's alleged monopolistic moves in the newspaper market—using false data to increase advertising rates. The distributors were not consumers because they did not buy advertising in the paper. And they were not competitors because they did not produce any other newspaper in the market. Their injury was indirect—caused not by the monopolistic conduct but by their disapproval of it. Here, Nexpera is allegedly seeking to eliminate Prokop's ability to use his expertise in competition with Nexpera in the same market. The fact that Prokop is a Sage employee and does not individually sell and install KOH regeneration technology does not insulate him against the causes of action brought directly against him in order to force him to cease and desist his allegedly essential contribution to competition against Nexpera.

The Magistrate Judge found that it was plausible that Nexpera's filing of this lawsuit was an anticompetitive act and there has been no objection to that finding. *See* D.E. 174, p. 13 n.4. Prokop alleges injuries directly attributable to Nexpera's litigation, including

financial and reputational harm. Consequently, the Court sees no error in recognizing Prokop's standing to complain of Nexpera's lawsuit in antitrust terms. Nexpera's objection is **OVERRULED**.

## CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as Prokop and Nexpera's respective objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court

- **SUSTAINS** Prokop's objection to the M&R's basis for dismissal of his third-party beneficiary breach of contract claim as to the neutral-reference provision of the Settlement Agreement; and
- **SUSTAINS** Nexpera's objection to the M&R's recommendation against applying the litigation privilege as an alternative basis to defeat the breach of contract claim as to the neutral-reference provision.

The Court **OVERRULES** all of the other objections.

With the modifications to the analysis set out above, the Court **ADOPTS** as its own the findings and conclusions of the Magistrate Judge. Accordingly, the Court:

- **GRANTS** Nexpera's motion to dismiss as to Sage and Prokop's § 1 conspiracy antitrust counterclaims (Sage counterclaim 1) (Prokop counterclaim 2) and those claims are **DISMISSED WITH PREJUDICE**;
- **DENIES** Nexpera's motion to dismiss as to Sage and Prokop's § 2 monopoly based antitrust counterclaims (Sage counterclaim 1) (Prokop counterclaim 2);
- **DENIES** Nexpera's motion to dismiss Sage and Prokop's trade secret counterclaims (Sage counterclaims 2 and 3) (Prokop counterclaims 4 and 5);

- **GRANTS** Nexpera's motion to dismiss as to Sage's tortious interference with contract counterclaim (Sage counterclaim 4) and Prokop's interference with existing and prospective business relationships (Prokop counterclaim 3) and those claims are **DISMISSED WITH PREJUDICE**;
- **DENIES** Nexpera's motion to dismiss Sage's unfair competition by common law misappropriation counterclaim (Sage counterclaim 5);
- **GRANTS** Nexpera's motion to dismiss Prokop's third-party beneficiary breach of contract claim with respect to the non-disparagement clause of the Settlement Agreement (Prokop Counterclaim 1);
- **GRANTS** Nexpera's motion to dismiss Prokop's third-party beneficiary breach of contract claim with respect to the neutral-reference clause of the Settlement Agreement (Prokop Counterclaim 1); and
- **DENIES** Sage and Prokop's requests to be granted leave to amend.

**ORDERED** on October 14, 2026.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE